CROSS, Judge
(dissenting).
I must respectfully dissent.
I agree with the plaintiff that under the facts of this case the defendant had waived its rights to rely upon the condition precedent of soundness of health contained in the certificate of insurance as a defense. To reach this conclusion necessitates elucidation upon the facts and testimony proffered at the trial.
The facts are that Raymond Fanguiaire was a salesman for the Faircloth Buick Company. Faircloth Buick also operated the Fair Deal Insurance Company as a separate corporation. Mr. Kaiser, the general manager of Faircloth Buick, was also the licensed agent of the defendant through Fair Deal Insurance Company. Mr. Kaiser had instructed all of the automobile salesmen, including Fanguiaire, to use all possible salesmanship to sell Credit Life Insurance. Fanguiaire did in fact sell Credit Life Insurance to the plaintiff. There can be no doubt that Fanguiaire was an agent or a subagent of.,the defendant. A substantiation of these facts is derived from the following testimony.
“BY MR. O’HAIRE:
“Q Mr. Kaiser, will you state your name, please ?
“A F. R. Kaiser, Jr.
“Q And what is your occupation, Mr. Kaiser ?
“A At present, sir?
“Q Yes.
“A I am Manager of Fair Deal Auto Leasing, Incorporated.
Mr. Kaiser, what was your occupation in March of 1962, do you recall? a
General Manager of Faircloth Buick. <i
Mr. Kaiser, at that time were you a licensed agent of the American Southern Life Insurance Company? a
I was.” <
Testimony of Mr. Fanguiaire:
“Q Mr. Fanguiaire, you say that that was one of your complaints with Faircloth Buick? Do you mean by that you were instructed to push the sale of Credit Life Insurance?
“A Yes.
% 5{c ifc j}j ifc
“Q In other words, you are not certain who determines which insurance company get the Credit Life?
“A That’s right.
*101 “Q It could be Faircloth Buick and it could be G.M.A.C., is that what you are saying?
“A That’s right.
“Q On your employer’s instructions, his instructions are for you to sell if you can, is that right?
“A That’s right.
“Q And to use all reasonable means of salesmanship to sell it?
“A Yes.”
Fanguiaire knew or should have known that the insured was not in good health. In 1961 Fanguiaire sold a Buick to Mrs. Hardy and took an installment sales contract to Mr. Hardy at the Veterans’ Hospital. Fanguiaire knew at that time that Mr. Hardy was a patient of the hospital; he nevertheless sold Credit Life Insurance on Mr. Hardy’s life. On that occasion he certainly was aware of sufficient facts to excite attention and call for an inquiry as to Mr. Hardy’s health. On the occasion of the sale of the 1962 Buick and the insurance policy in question, Mr. Fanguiaire did not inquire as to Mr. Hardy’s health. Not only that, but according to Mr. Fanguiaire’s testimony, he was not even aware of the good health provisions of the policy notwithstanding the fact that he was acting as agent or subagent for the defendant insurance company when he solicited and sold the Credit Life policy. A substantiation of the above facts is derived from the following testimony.
“Q Did you ever tell anybody that they had to be in good health to get life insurance ?
“A No. It was just age only.
“Q Were you ever told that health had anything to do with Credit Life Insurance ?
“A No. Age was the objection.
“Q If you were under sixty-five you were insured if you had a bona fide purchase and a bona fide contract?
“A Yes, sir.
“Q Were these bona fide purchases and contracts ?
“A Yes, sir.”
In my opinion the instant case is governed by the following rule:
“As a general rule the insurer is precluded from asserting a ground of forfeiture resulting from mistake, fraud or negligence of its agent without the knowledge or collusion of the insured.” 45 C.J.S. Insurance § 728; Dickens v. St. Paul Fire & Marine Insurance Co., 1936, 170 Tenn. 403, 95 S.W.2d 910. (Emphasis added.)
I think it was negligence for the agent or subagent to issue the certificate of insurance without inquiring as to the insured’s health, or even understanding the conditions of the policy he sold. He knew or should have known the insurer would deny liability in the event it was determined the insured was not of sound health when the policy was issued. He took that chance which resulted in this lawsuit. His act was the act of the insurer and the company should be the party to suffer.
The above facts and testimony lead me to the irrefutable conclusion that the defendant insurance company through its agent or subagent had knowledge of or was under the duty to inquire of the health of the insured prior to the issuance of the policy and subsequent thereto. By having this information the insurance company should have made further inquiry dictated by reasonable prudence. However, it deliberately disregarded this information, and I think it must now be charged with knowledge of the facts which such an inquiry would have disclosed.
This lawsuit would probably never have arisen had the agent or subagent, Fan-guiaire, merely asked of the insured the *102 condition of his health and inquired about the conditions of the policy he sold. Had the deceased or his wife misrepresented the condition of his health the insurance company would have had a valid defense.
The rather well known and often quoted rule is that when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy any equivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture will constitute a waiver thereof. While ordinarily the insurer is not deemed to have waived its rights unless it is shown that it has acted with full knowledge of the facts the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite the attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared. Johnson v. Life Insurance Company of Georgia, Fla.1951, 52 So.2d 813; 44 C.J.S. Insurance § 276.
An analogous situation arises with respect to fire insurance policies which contain clauses that condition liability on the sole ownership of the property insured which was issued on oral application and no inquiry made as to the status of the title by the insurer or its agent.
With respect to such a situation it is said in Vance, Insurance, 3rd Ed., Anderson, Section 89, page 540:
“ * * * After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant’s property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agenfs mistakes or negligence in making inquiries that he should know to he pertinent should rest on the insurer. The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows . is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose.” (Emphasis added.)
I conclude that under the particular facts of this case the insurer waived or was estopped to plead the condition precedent of sound health as a defense to this suit.
Accordingly I would affirm the judgment of the lower court.